IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRADLEY EGGEN and MARY EGGEN,
on behalf of themselves and all others
similarly situated,

                                                                                            OPINION and ORDER

                    Plaintiffs,

                                                                                         14-cv-873-bbc

      v.

WESTCONSIN CREDIT UNION,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiffs Bradley Eggen and Mary Eggen received a personal loan from defendant WESTconsin Credit Union. As part of that process, defendant obtained plaintiffs' driver's license numbers. When plaintiffs defaulted on the loan, defendant sued plaintiffs in Wisconsin small claims court, attaching to the complaint at least one document that had plaintiffs' unredacted driver's license numbers on it.

      In this certified class action, plaintiffs contend that defendant's disclosure of their driver's license numbers, as well as the numbers of other class members who were sued by defendant in Wisconsin, violated the Driver's Privacy Protection Act and the Wisconsin common law of nuisance. Defendant has filed a motion for summary judgment, dkt. #84, which is ready for review.

      With respect to plaintiff's claim under the Driver's Privacy Protection Act, defendant

1

raises two arguments: (1) because defendant obtained plaintiffs' driver's license numbers from the plaintiffs' own licenses, defendant did not disclose information "from a motor vehicle record," as required by the Act; and (2) defendant included the driver's license numbers in its court filings because it was required to do so under state law, so it had a permissible purpose for disclosing the numbers.  Defendant raises two arguments against plaintiffs' nuisance claims as well: (1) defendant's actions did not substantially interfere with a public place or a community, as required by Wisconsin's nuisance law; and (2) plaintiffs did not suffer the type of harm necessary to sustain a nuisance claim.  (Although plaintiffs originally included claims regarding disclosure of their Social Security numbers, neither side discusses that issue in their briefs, so I will assume that plaintiffs have abandoned those claims as to both the named plaintiffs and the class as a whole.)

Having reviewed the parties' summary judgment submissions, I am denying defendant's motion for summary judgment as to plaintiffs' claims under the Driver's Privacy Protection Act, but I am granting the motion as to the nuisance claims.  With respect to the federal claim, I conclude that a driver's license qualifies as a "motor vehicle record" and that defendant has not identified a permissible purpose for including plaintiff's protected information in court filings without redacting those filings or sealing them.  With respect to the state law claim, I conclude that plaintiffs have failed to show that they can meet the standard for proving a public nuisance claim.

Although plaintiffs did not file their own motion for summary judgment, it is not clear what issues are left to resolve as to plaintiffs' claims under the Driver's Privacy Protection Act.

2

The issues I decided with respect to that claim are legal, not factual, so they do not require further review by the factfinder. Because the parties do not identify any other factual (or legal) issues that remain in dispute, I am directing the parties to show cause why I should not grant summary judgment in plaintiffs' favor on the court's own motion. Fed. R. Civ. P. 56(f) (court may grant summary judgment for nonmovant after giving notice and a reasonable time to respond). The parties should include a discussion of damages.

OPINION

A. Scope of Defendant's Motion for Summary Judgment

A threshold problem with defendant's motion for summary judgment is that defendant's proposed findings of fact relate solely to the two named plaintiffs, Bradley Eggen and Mary Eggen, dkt. #86, even though this case has been certified as a class action. Defendant does not explain the reason for this. Defendant's silence is surprising, particularly because the court denied defendant's previous motion for summary judgment without prejudice on the ground that its scope was limited to the named plaintiffs. However, plaintiffs do not argue that the scope of defendant's motion should be limited to the named plaintiffs. Rather, they assume as defendant does that the facts related to the Eggens' experience are identical to those of the rest of the class. Accordingly, I will follow the parties' lead on this issue and treat defendant's summary judgment motion as though it applies to all class members.

3

B.  Driver's Privacy Protection Act

Under 18 U.S.C. § 2724(a), "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains."  In this case, plaintiffs do not contend that defendant obtained any information unlawfully.  Rather, their claim is that defendant violated § 2724(a) by "disclos[ing]" their driver's license numbers without a lawful purpose.

In response, defendant does not deny that plaintiffs' driver's license numbers qualify as "personal information" or that defendant "disclose[d]" that information by including the numbers in court filings without redacting them or sealing the documents in which the numbers were contained.  However, defendant says that it cannot be held liable under the Act for two reasons.

First, defendant says that the definition of the phrase "motor vehicle record" does not encompass a driver's license.  Rather, defendant says that the definition is limited to records "contained within the transportation department's database."  Dft.'s Br., dkt. #85, at 9. Because defendant says that it obtained plaintiffs' driver's license numbers from their driver's licenses, defendant argues that it did not obtain personal information "from a motor vehicle record."

Second, defendant says that its disclosure of the driver's license numbers was permitted under 18 U.S.C. § 2721(b)(4), which allows disclosure of personal information "[f]or use in connection with any civil . . . proceeding in any Federal, State, or local court .

4

. . . , including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court." Defendant says that § 2721(b)(4) applies because plaintiffs' driver's license numbers were included on loan documents that state law required defendant to attach to the complaints that it filed against plaintiffs in state court. I will consider each of these arguments in turn.

1. From a motor vehicle record

Defendant says that it obtained plaintiffs' driver's license numbers in two ways: (1) photocopying their licenses or (2) verbally asking them to read their license numbers from their licenses. However, defendant does not identify a particular class member who provided his or her driver's license number verbally rather than giving defendant the license to photocopy. In any event, defendant does not argue that there is a legal difference between the two ways of obtaining the license number, at least for the purpose of this case. Rather, defendant's argument is that a driver's license is not a "motor vehicle record" under the Act. Accordingly, I will assume as defendant does that, regardless whether the license number is photocopied or read aloud, the information comes "from" the driver's license. This makes it unnecessary to consider plaintiffs' argument that a driver's license number is itself a "motor vehicle record," even when it is not included on a document or other tangible object.

On its face, defendant's argument that a driver's license is not a "motor vehicle record" is difficult to take seriously. After all, a driver's license is created by the Department of

Motor Vehicles and it is a record of the information on the license. However, defendant argues that the ordinary meaning of a "motor vehicle record" does not apply because the phrase is defined in 18 U.S.C. § 2725(1): "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." Defendant's argument is not well developed, but the gist of it is in one sentence: "The definition does not include the permit or identification card itself, but rather the records pertaining to them." Dft.'s Br., dkt. #85, at 9. In addition, defendant says that § 2725(1) limits the meaning of a "motor vehicle record" to records that are "contained in the transportation department's database." Id.

Defendant's argument seems to be based on the premise that a driver's license cannot "pertain to" itself, but it cites no authority for that view. Margan v. Niles, 250 F. Supp. 2d 63, 70 (N.D.N.Y. 2003) ("[T]he [Driver's Privacy Protection Act] prohibits the disclosure of information that identifies an individual obtained from a motor vehicle operator's permit, title, registration, or identification card.") (internal quotations omitted). Again, the idea that a driver's license is not a "motor vehicle record" defies common sense. Carachuri-Rosendo v. Holder, 560 U.S. 563, 573 (2010) ("When interpreting . . . statutory provisions . . ., we begin by looking at the terms of the provisions and the 'commonsense conception' of those terms."). It is clear that the use of the phrase "pertains to" is meant to *expand* the scope of the Act's coverage, so that a driver's information is protected not just with respect to a small list of the most obvious motor vehicle records, but any related records as well. Cf. Welborn Clinic v. MedQuist, Inc., 301 F.3d 634, 639 (7th Cir. 2002) (phrase "relating to" is

6

"expansive" and "broad").  If Congress had wanted to exclude from protection the very records that are listed in the statute, one would expect much clearer language expressing that intent.

Both the Court of Appeals for the Seventh Circuit and the Supreme Court have rejected other attempts by other defendants to construe the Act in a way that would arbitrarily limit a plaintiff's rights, which is what defendant is trying to do.  Maracich v. Spears, 133 S. Ct. 2191, 2202 (2013) (rejecting literal reading of Driver's Privacy Protection Act that would create exception for solicitation by lawyers); Senne v. Village of Palatine, Illinois, 695 F.3d 597, 603 (7th Cir. 2012) (adopting broad view of what qualifies as "disclosure" and narrow view of statutory exception for litigation conduct).  In essence, defendant is attempting to read in a requirement that a "motor vehicle record" must be maintained by the department of motor vehicles, but the statute includes no such limitation. Section § 2725(1) says that a record is protected if it is "issued" by the department of motor vehicles; it does not matter where the record is stored.

The case defendant cites to support its argument, Taylor v. Acxiom Corp., 612 F.3d 325, 335 (5th Cir. 2010), addressed questions related to the circumstances under which bulk distribution of records are permitted under the Act.  The case had nothing to do with the definition of a "motor vehicle record," so it is not instructive.

Alternatively, defendant argues that a narrow interpretation of "motor vehicle record" is consistent with the primary purposes of the Act, which defendant describes as "protecting public safety" and preventing a department of motor vehicles from selling information to

7

third parties. Dft.'s Br., dkt. #85, at 7-8. However, even if I assume that defendant has identified the Act's primary purposes correctly, it is well established that the scope of a statute is not confined to its primary purposes. "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79 (1998).

Congress may have been motivated to enact the Driver's Privacy Protection Act by specific concerns. Senne v. Village of Palatine, Illinois, 784 F.3d 444, 448 (7th Cir. 2015) ("[A] television actress was murdered in 1989 by a stalker whose private investigator had lawfully obtained her unlisted address from the California Department of Motor Vehicles. The murder was a catalyst of the Driver's Privacy Protection Act."). However, as the name of the Act suggests, the broader goal was to protect the privacy of information included in documents issued by state departments of motor vehicles. Senne, 695 F.3d at 605 ("[T]he statute's purpose, clear from its language alone, is to prevent all but a limited range of authorized disclosures of information contained in individual motor vehicle records."). Limiting the dissemination of personal information on a driver's license fits comfortably within that goal.

2. Permissible purpose

Even with respect to records that are protected, the Act allows disclosure for various reasons listed in 18 U.S.C. § 2721(b). Defendant relies on § 2721(b)(4), which, as noted

8

above, allows disclosure of personal information "[f]or use in connection with any civil . . . proceeding in any Federal, State, or local court." In particular, defendant says that it was required to include plaintiffs' driver's license numbers in court filings under Wis. Stat. § 425.109(1)(h), which provides: "A complaint by a merchant to enforce any cause of action arising from a consumer credit transaction shall include . . . an accurate copy of the writings, if any, evidencing the transaction." I see three problems with this argument.

First, in its proposed findings of fact, defendant cites plaintiffs' complaint in this case for the propositions that defendant attached "relevant loan paperwork" to its complaint against the Eggens in state court and that "one document" contained plaintiffs' driver's license numbers. Dft.'s PFOF ¶¶ 11-12, dkt. #86. Even if I set aside the problems that the proposed findings of fact say nothing about any class members other than the named plaintiffs and that a complaint is not admissible evidence, Brown v. Advocate South Suburban Hospital, 700 F.3d 1101, 1104-05 (7th Cir. 2012), defendant fails to identify the document at issue with any specificity, so it is impossible to determine as a matter of law whether the document or documents at issue were required by § 425.109.

Second, defendant does not explain why plaintiffs' driver's license numbers were on the loan document. Defendant seems to assume that § 2721(b)(4) gives it a free pass to disclose any protected information it wants, even if the protected information could have been omitted, so long as that information is provided in a document that is filed in a lawsuit. However, the Supreme Court has resisted similar attempts to interpret § 2721(b)(4) in such a permissive manner. Maracich, 133 S. Ct. at 2200 ("If (b)(4) were read to permit disclosure

9

of personal information whenever any connection between the protected information and a potential legal dispute could be shown, it would undermine in a substantial way the DPPA's purpose of protecting an individual's right to privacy in his or her motor vehicle records. The 'in connection with' language in (b)(4) must have a limit."). To further the interests in privacy that the Act is meant to protect, the Court held that § 2721(b)(4) "has a limited scope to permit the use of highly restricted personal information when it serves an integral purpose in a particular legal proceeding." Id. at 2202. If defendant's decision to include protected information on a document was gratuitous, it would be difficult to argue that the decision "serve[d] an integral purpose" in the lawsuit, even if the document itself was a required disclosure.

Finally, even if I assume that Wis. Stat. § 425.109 required defendant to include the documents at issue in court filings *and* that defendant had a good reason for including plaintiffs' driver's license numbers on those documents, defendant does not identify any reason that it failed to redact plaintiffs' protected information. Sensitive information such as Social Security numbers and matters related to intellectual property or health issues are included in many lawsuits, but this information is redacted or sealed as a matter of course.

Section 2721(b)(4) allows a party to disclose personal information "for use" in litigation. The loan documents themselves may have been attached "for use" in litigation, but defendant does not identify any purpose related to the litigation that was served by disclosing plaintiffs' driver's license numbers. Senne, 695 F.3d at 606 ("[T]he actual information disclosed—i.e., the disclosure as it existed in fact—must be information that is used for the

10

identified purpose. When a particular piece of disclosed information is not used to effectuate that purpose in any way, the exception provides no protection for the disclosing party."). In fact, defendant implicitly concedes that the numbers served no purpose because, since 2013, it has redacted driver's license numbers in documents filed in delinquency actions. Dft.'s Resp. to Plt.'s PFOF ¶ 20, dkt. #93. If § 2721(b)(4) were interpreted as allowing public disclosure of any protected information included in a document filed in litigation, even a required document, it would leave a gaping hole in the protections of the Act. Because that would be inconsistent with both the intent of Congress and the understanding of § 2721(b)(4) in Maracich and Senne, I am denying defendant's motion for summary judgment on plaintiff's claims under the Driver's Privacy Protection Act.

### C. Public Nuisance

Wisconsin law recognizes both private and public nuisances, but plaintiffs are relying solely on a public nuisance theory (presumably because private nuisances are limited to land disputes, Milwaukee Metropolitan Sewerage District v. City of Milwaukee, 2005 WI 8, ¶¶ 27-28, 277 Wis. 2d 635, 658, 691 N.W.2d 658, 669–70). "A public nuisance involves the impingement of public rights, rights that are common to all members of the public." Bostco LLC v. Milwaukee Metro. Sewerage District, 2013 WI 78, ¶ 29, 350 Wis. 2d 554, 575, 835 N.W.2d 160, 171. A public nuisance is defined as "a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community." Physicians Plus Insurance Corp. v. Midwest Mutual Insurance Co., 2002

11

WI 80, ¶ 21, 254 Wis. 2d 77, 103, 646 N.W.2d 777, 789.

Although defendant argues in its opening brief that its conduct does not qualify as a substantial interference with a public space or an entire community, plaintiffs do not explain in their response brief why they believe they have satisfied the Wisconsin standard for public nuisance. This is a sufficient reason to conclude that defendant's motion for summary judgment should be granted as to the nuisance claim. Cincinnati Insurance Co. v. East Atlantic Insurance Co., 260 F.3d 742, 747 (7th Cir. 2001) ("A failure to oppose an argument permits an inference of acquiescence and "acquiescence operates as a waiver.").

Even if I consider the merits of this claim, I see no basis for it. With respect to the nature of the harm, the disclosure of plaintiffs' personal information does not restrict plaintiffs' access to a "public space." Further, plaintiffs have not identified a "community" that has been disrupted. The parties affected by defendant's conduct have no relationship with each other except that they took out loans from defendant and were subsequently sued for failing to repay them. In other words, defendant's conduct posed no threat to the "public," but only to individuals who chose to enter into contracts with defendant. Cf. Kailin v. Armstrong, 2002 WI App 70,¶ 42, 252 Wis. 2d 676, 643 N.W.2d 132 (Ct. App.2002) (plaintiff is not member of "public" within meaning of consumer fraud statute if plaintiff had contract with defendant). With respect to the severity of the harm, plaintiffs do not allege that any of them have suffered harm other than the disclosure itself. If that qualifies as a "substantial" harm, then that element of a public nuisance claim has little meaning.

Plaintiffs' only response to defendant's argument is a citation to Lambert v. Hartmann,

898 N.E.2d 67, 74 (Ohio Ct. App.), rev'd on other ground sub nom., Lambert v. Clancy, 927 N.E.2d 585 (Ohio Sup Ct.).  In that case, the court concluded that the plaintiffs stated a claim under Ohio public nuisance law with allegations that they had suffered from identity theft after county officials published their Social Security numbers on the internet. Id.

Lambert is not instructive for multiple reasons.  To begin with, there is little analysis in the opinion.  The court simply stated that the plaintiffs had alleged all of the elements of a public nuisance claim under Ohio law; the court did not explain why it believed the allegations were legally sufficient.  Moreover, there are two key factual differences between this case and Lambert.  First, in Lambert, the plaintiffs were not individuals who had entered into contracts with the defendant; rather, there was a stronger argument that the defendants had created a *public* nuisance because the plaintiffs alleged that county officials had published the personal information of "thousands" of individuals who had contact with the county court.  Id. Second, the plaintiffs in Lambert alleged a substantial interference in the form of actual identity theft.  As noted above, plaintiffs have not identified a comparable harm in this case.

In sum, plaintiffs have not identified any plausible grounds for recognizing a public nuisance claim under Wisconsin law with respect to the facts of this case.  Accordingly, I am granting defendant's motion for summary judgment on this claim.

It appears from the record compiled to date that summary judgment should be granted in plaintiffs' favor with respect to their claims under the Driver's Privacy Protection Act claim.  However, I will give defendants an opportunity to show why judgment should not be

13

granted to plaintiffs on these claims and give plaintiffs an opportunity to respond. In order to accommodate this briefing, I will move to September 1, 2016 the telephone conference now scheduled for August 19, 2016.

ORDER

IT IS ORDERED that

1. Defendant WESTconsin Credit Union's motion for summary judgment, dkt. #84, is GRANTED with respect to the public nuisance claim brought by plaintiffs Bradley Eggen and Mary Eggen. Defendant's motion is DENIED with respect to plaintiffs' claim under the Driver's Privacy Protection Act.

2. The telephone conference now scheduled for August 19, 2016 is rescheduled to 9:00 a.m. on September 1 , 2016.

3. Defendant may have until noon on August 24, 2016, to show cause why summary judgment should not be granted in plaintiffs' favor with respect to their claims under the Driver's Privacy Protection Act. Plaintiffs may have until 6:00 p.m. on August 29, 2016, to respond. Defendant may have until noon on August 31, 2016 to reply.

Entered this 16th day of August, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge