# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

---

Bradley Eggen and Mary Eggen,
on behalf of themselves and
all others similarly situated,                          File No.:   14-cv-00873-bbc

                            Plaintiffs,

vs.

WESTconsin Credit Union,

                            Defendant.

---

# PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...............................................2

        A.      Factual Background ...................................................................4

        B.      Procedural Background...............................................................5

        C.      The Settlement Terms and Agreement .........................................7

                1.      *The Proposed Class*....................................................7

                2.      *The Relief and Settlement Consideration* ......................7

                3.      *Release of Claims*.......................................................8

                4.      *Class Notice and Opt-Out Right*................................ 8-9

                5.      *Class Counsel Fees and Expenses and Named Plaintiffs Case*
                        *Contribution Incentive Award*..................................... 9

III.    THE PROPOSED SETTLEMENT WARRANTS
        PRELIMINARY APPROVAL .............................................................9

        A.      The Settlement is the product of good faith, informed, and arm's length
                negotiations among experienced counsel ................................11

        B.      The Settlement provides the Class with the relief
                that caused the litigation to be filed, which
                demonstrates beyond question that the Settlement is
                within the range of reasonableness .........................................12

        C.      The Settlement will obviate litigation and appeal hurdles for the
                Class ..................................................................................13

        D.      Counsel submits that the Settlement is reasonable and in the Class
                Members' best interests ........................................................ 14

IV.     PROPOSED SCHEDULE OF EVENTS..................................................... 14-15

VII.    CONCLUSION...................................................................................15

i

Plaintiffs Bradley and Mary Eggen, on behalf of themselves and a class of similarly situated persons, and with the consent of Defendant WESTconsin Credit Union ("WCU"), respectfully request entry of an order granting preliminary approval of the class action Settlement and Release, certifying a class for settlement purposes, and providing for issuance of notice to Class Members.[1]

## I.   <u>INTRODUCTION</u>

After two years of hard-fought litigation, Plaintiffs and WCU (collectively "the Parties") have entered into a Settlement Agreement and Release in resolution of all claims set forth in <u>Eggen, et al v. WESTconsin Credit Union</u>, Case No. 14-cv-00873-bbc, to resolve all claims for the total amount of Seven Hundred Thousand Dollars ($700,000). The proposed Settlement is an excellent result that is in the best interests of the Class and, accordingly, should be preliminarily approved by the Court.

Plaintiffs' lawsuit initially asserted claims based on alleged violation of the Wisconsin Consumer Act, Wisconsin's privacy statute, the Driver's Privacy Protection Act ("DPPA"), and Wisconsin's public nuisance statute. The Eggens' claims based on alleged violation the of the Wisconsin Consumer Act and Wisconsin's privacy statute were dismissed on March 20, 2015, and therefore the only remaining claims were those based on alleged violation of the DPPA and Wisconsin's public nuisance statute.

---

[1] The Settlement Agreement is attached as **Exhibit A.** Unless otherwise noted, all capitalized terms used here have the same definition as that provided in the Settlement Agreement. As used herein, the term "Class" means the Settlement Class, and "Class Member" means a Settlement Class Member, as those terms are defined in the Settlement Agreement.

Plaintiffs filed the Action on December 16, 2014, and asserted these claims on behalf of themselves and a purported class of persons similarly situated.

Under the Settlement, WCU has agreed, among other things, to create a common fund in the total amount of Seven Hundred Thousand Dollars ($700,000).   The Settlement's benefits were the result of rigorous, arm's length negotiations by the Parties and their counsel, including a failed mediation on September 2, 2016.

With this motion, Plaintiffs seek entry of an order providing for, among other things:

(1)     Preliminary approval of the Settlement;

(2)     Approval of the form of notice describing:

     a.     The Settlement, and Class Members' rights with respect to the Settlement;

     b.     The proposed Release of claims;

     c.     Class Counsel's request for attorneys' fees and expenses;

     d.     The procedure for opting out of or objecting to the Settlement; and

(3)     The scheduling of a hearing to consider the final approval of the Settlement (the "Final Approval Hearing").

At the Final Approval Hearing, the Court will have before it more expansive filings submitted in support of the proposed Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under Rule 23 of the Federal Rules of Civil Procedure. At this time, however, Plaintiffs request only that the Court preliminarily approve the Settlement so that notice may be provided to the Class. Thus, the Court is not required at this point to make a final determination

regarding the reasonableness of the Settlement, and no Class Member's substantive rights will be prejudiced by preliminary approval. For purposes of this motion, the primary issue before the Court is whether the proposed Settlement's terms are within the range of what *might* be approved as fair, reasonable, and adequate, in order to justify mailing and publishing notice of the Settlement, and scheduling a final hearing. At this time, the Court need only find that the Settlement is "the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

Plaintiffs and Class Counsel respectfully submit that the Settlement is fair, reasonable and adequate, and should receive the Court's preliminary approval. The Parties are well positioned to make this recommendation after having actively litigated this case for two years. During that time, Class Counsel spent hours researching and investigating claims, allegations and defenses regarding WCU, considering the likelihood of an appeal, including reviewing pages of documents and relevant literature, and speaking with the Class Representatives and experts in the consumer class field. That investigation provided Class Counsel with a thorough understanding of the strengths and weaknesses of this case, and the ability to readily evaluate the risks associated with it, as well as the fairness of the proposed Settlement, which was reached after an arm's-length negotiation.

With this thorough understanding, Plaintiffs and Class Counsel submit that the Settlement is beneficial for Class Members. The benefits and value of the relief to Class Members must be analyzed in light of the risks of protracted and contested litigation

including a scheduled trial on damages and a promised appeal. Thus, the Parties submit that the proposed Settlement is in the best interests of Class Members and warrants preliminary approval.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

Plaintiffs, Bradley and Mary Eggen ("the Eggens"), approached WCU for a personal loan.  As part of the loan process, plaintiffs provided their driver's license numbers ("DLNs") and Social Security numbers ("SSNs").  Plaintiffs also provided their driver's licenses and Social Security cards, which were photocopied.  Plaintiffs acknowledged that they were unaware of any other way WCU obtained their DLNs and SSNs other than them verbally telling WCU or voluntarily showing WCU their driver's licenses or Social Security cards.  WCU did not contact the Wisconsin Department of Motor Vehicles to obtain Plaintiffs DLNs or SSNs.  WCU followed the same course with respect to the other class members, who are now Plaintiffs if they did not opt out of the class.

Plaintiffs contracted with WCU for a loan on October 30, 2008.  Plaintiffs were ultimately unable to repay the balance of the loan and fell into default under the agreement with WCU.  As a result, WCU sent Plaintiffs several notices of right to cure default, but Plaintiffs failed to cure the default of the loan.  For that reason WCU filed a replevin action against Plaintiffs in St. Croix County, Wisconsin Small Claims Court seeking to recover a replevin judgment against Plaintiffs for the replevin of collateral,

plus costs and disbursements.[2]   WCU attached to the replevin action a copy of some of the relevant paperwork relating to the loan.   One such attached document contained Plaintiffs' DLNs and SSNs.

WCU sought the entry of a default judgment against Plaintiffs, which was entered on or about January 25, 2011.

### B.     Procedural Background

On December 12, 2014, almost four years after the default judgment was entered, Plaintiffs filed a motion with the St. Croix County Circuit Court asking the court to seal the court record.   Plaintiffs then filed the instant lawsuit, initially asserting claims based on alleged violations of the Wisconsin Consumer Act, Wisconsin's privacy statute, the Driver's Privacy Protection Act ("DPPA"), and Wisconsin's public nuisance statute.[3] Plaintiffs' claims based on alleged violations of the Wisconsin Consumer Act and Wisconsin's privacy statute were dismissed on March 20, 2015.   Thus, the only remaining claims are those based on alleged violations of the DPPA and Wisconsin's public nuisance statute.

On February 26, 2016, the Court certified this as a class action and defined the class as follows:   "All individuals whose driver's license numbers defendant WCU disclosed on or after December 16, 2010 in an action filed in Wisconsin circuit court to

---

[2] *WESTconsin Credit Union v. Eggen*, No. 2010-SC-1975 (St. Croix Co., Wisconsin).

[3] Plaintiffs' lawsuit originally contained allegations relating to disclosure of their Social Security numbers, in addition to the DLNs.   However, the class has been certified to include only those individuals whose DLNs have been disclosed by WCU as part of an action filed in Wisconsin circuit court.

recover unpaid loan balances."  The class was given proper notice and an opportunity to opt out by the deadline of May 27, 2016.  Therefore, "the plaintiffs" now include all class members who have not opted out of the class.  Additionally, the facts of the named plaintiffs' claims, as outlined above, are representative of the experiences of all class members.[4]

On June 1, 2016, WCU moved for summary judgment on both remaining claims. In the Court's August 16, 2016, Opinion and Order, this Court granted WCU's motion for summary judgment dismissing plaintiffs' claim for a public nuisance, but denied defendant's motion for summary judgment on the sole remaining claim based upon the DPPA.  In that same order, the Court directed the parties to show cause why the Court should not grant summary judgment in favor of the plaintiffs on its own motion because, in this Court's opinion, no factual or legal issues remain in dispute.  Thereafter, on October 27, 2016, this Court issued an Order finding in favor of the plaintiffs' on the DPPA claim and directed the plaintiffs to demonstrate to the Court whether they had evidence to support a punitive damage claim such that the claim could be presented to a jury.  Prior to a trial on punitive damages, the parties entered into this settlement agreement.

---

[4] Pursuant to Rule 23(b)(3), under which this class was certified, the questions of law or fact common to the class members predominate over any questions affecting only individual members, and this class action is superior to other available methods for efficient adjudication of the controversy.  Therefore, these common questions of fact can be resolved for all members of the class in this single adjudication.  *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (citing *Messnerv. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012)).

### C.      The Settlement Terms and Agreement

As set forth below, after substantial and sustained effort by the Parties, the Parties were able to reach a proposed Settlement, which provides $10,000 to the class representatives ($5,000 to each); and payments of $1,149.15 to each of the 381 class members.  The Settlement also requires WCU to redact all court records that included class members' personal information beginning December 16, 2010.

#### 1.      The Proposed Class

The proposed Settlement provides relief to the Settlement Class, which class has been certified by this Court to include: All individuals whose driver's license numbers WCU disclosed on or after December 16, 2010, in an action filed in Wisconsin circuit court to recover unpaid loan balances.

#### 2.      The Relief and Settlement Consideration

Under the Settlement, WCU agrees to make a total payment to a common fund settlement in the amount of $700,000, which will be paid as follows:

a.      Two Hundred Thirty One Thousand Dollars ($231,000) in attorneys' fees;

b.      Twenty One Thousand, One Hundred Seventy Four and 01/100 Dollars ($21,174.01) for costs including class administration and litigation costs;

c.      Ten Thousand Dollars ($10,000) to the class representatives ($5,000 to each); and

d.      Payments of One Thousand, One Hundred Forty Nine and 15/100 Dollars ($1,149.15) to each of the 381 class members.

The Settlement also mandates that WCU redact all Wisconsin circuit court records beginning December 16, 2010, that reveal the class members ' driver's license numbers.

### 3.      *Release of Claims*

In exchange for the settlement consideration, members of the Settlement Class will release and forever discharge WCU and its respective past, present, and future officers, directors, shareholders, stockholders, policyholders, members, principals, parents, subsidiaries, affiliates, divisions, partners, insurers, reinsurers, employees, servants, agents, representatives, administrators, executors, beneficiaries, heirs, trustees, fiduciaries, attorneys, accountants, auditors, advisors, predecessors-in-interest, successors-in-interest, and assigns, of and from any and all past, present, or future claims, actions, demands, lawsuits, rights, liabilities, damages, losses, indebtedness, obligations, attorney's fees, interest, expenses, costs, and causes of action, arising from or in any way related to any alleged violation of the DPPA or any other claims or causes of action arising from or in any way related to the release or disclosure of personal information. This release does not extend to those claims that have been asserted in an action currently pending in the United States District Court for the District of Minnesota captioned *Jeremy Swenson, et al. v. WESTconsin*, Case No. 16-cv-2344, which claims are specifically excluded from this release and the five known opt outs:  Alyssa Johnson, Nicole Bormann, Judy Zimmerman, Joe Kobilka and Carolyn Fischer.

### 4.      *Class Notice and Opt-Out Right*

Class Members will receive notice of the Settlement in the form of the Mail Notice attached as **Exhibit B** hereto (and to the Settlement), assuming the form is approved by the Court. The manner of notice will include, but not be limited to, (i) establishment of a website and (ii) be limited to direct mail to currently available addresses. A settlement

website will be established, informing the Class Members of the settlement and on the website there will be an additional notice with greater detail attached as **Exhibit C** hereto (and to the Settlement).

Class Members who wish to preserve individualized claims may opt out of the Settlement by sending a written request to the Settlement Administrator at its address designated in the Mail Notice. The Settlement Administrator will communicate any opt-out requests to WCU and Class Counsel, who will in turn report them to the Court as part of the Final Approval Hearing. All notice costs, including the hiring of a Settlement Administrator, and providing class notice will be paid out of the Settlement Fund.

**5.      *Class Counsel Fees and Expenses and Named Plaintiffs Case Contribution Incentive Award***

WCU has agreed to pay and not object to a motion by Class Counsel for an award of attorneys' fees and expenses in the amount of 33.3% of the Settlement Fund or Two Hundred Thirty One Thousand Dollars ($231,000) to Class Counsel.  The Court will consider whether to grant or deny these awards separate and apart from its consideration of the fairness, reasonableness, and adequacy of the settlement.

**III.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).   The Seventh Circuit has repeatedly recognized the overriding public interest in settling litigation.  *See, i.e., Freeman v. Berge*, 68 Fed. App'x 738, 741 (7th Cir. 2003).  This is particularly true

9

in class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)("Federal courts naturally favor the settlement of class action litigation."); *see also, Armstrong, supra,* 616 F.2d at 312.   Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. (*Armstrong*, 616 F.2d at 313)

As noted above, approval of a class action settlement is a two-step process. *See, Armstrong*, 616 F.2d at 314. Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.; see also, Airline Stewards & Stewardesses Ass'n v. American Airlines*, 573 F.2d 960, 964 (7th Cir.), *cert. denied,* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978).   In the second step, after notice to Class Members and time and opportunity for them to object or otherwise be heard, the Court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Armstrong*, 616 F.2d at 314.

The standard for granting preliminary approval is low.  A proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness." Id.; see also, MANUAL FOR COMPLEX LITIGATION § 1.46 at 62, 64-65 (1982)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed . 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there

is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *See, Armstrong*, 616 F.2d at 314.

Class Counsel and WCU respectfully request that the Court take the first step in the process and grant preliminary approval of the Settlement. The Settlement is clearly within the range of reasonableness, and satisfies all standards for preliminary approval.

### A.     The Settlement is the product of good faith, informed, and arm's-length negotiations among experienced counsel

The Court need only decide at this stage whether the proposed settlement appears to be the result of informed, good-faith, arm's-length negotiation between the parties and their capable and experienced counsel and not the result of collusion. Courts begin this analysis by presuming good faith in the negotiation process. *Id.*

Here, the Settlement was the product of negotiation by the Parties through an arm's length negotiation after the failed mediation on September 2, 2016. The Parties' negotiations also were facilitated by the sharing of information.  From that information, as well as Class Counsel's investigation, the parties considered the strengths and weaknesses of the remaining claims, defenses, an upcoming trial on punitive damages and the promise of an appeal by Defendant.

The arm's-length nature of the settlement negotiations supports the conclusion that the Settlement is presumptively fair, reasonable, and adequate and that it was achieved

free of collusion.

**B.  The Settlement provides the Class with the relief that caused the litigation to be filed, which demonstrates beyond question that the Settlement is within the range of reasonableness**

WCU's use of plaintiffs' personal information in replevin actions following default of loans is what caused plaintiffs to file this action. The Settlement not only provides for monetary compensation to each class member (despite the fact that no class member possessed any evidence of damage as a result of the use of their personal information) but also the redacting of all Wisconsin circuit court records from December 16, 2010 forward that contain the class members' personal information. Thus, the Settlement paves the way for Three Hundred and Eighty One (381) Class Members to promptly benefit from the redacting of such court records as well as receipt of monetary compensation.

Plaintiffs and the Class faced ongoing litigation if the settlement was not reached, including a trial on punitive damages as well as an appeal, which would significantly delay obtaining any relief, even if an appeal were expedited. Other hurdles include a potentially unfavorable ruling by the 7th Circuit Court of Appeals. "[T]he more complex, expensive, and time consuming the future litigation, the more beneficial the settlement becomes as a matter of efficiency to the parties and the Court." *Armstrong, supra*, 616 F.2d at 313. At the very least, continued litigation would have required the Parties and the Court to expend additional resources litigating additional issues, would have significantly delayed the Class Members' receiving any relief, and would have presented a very real risk that at the end of the day, Class Members would obtain no relief whatsoever if this Court's rulings were reversed on appeal. Because of the Settlement, Class

Members will have immediate relief in the form of redacting all records in addition to monetary relief.  The relief provided by this Settlement unquestionably falls within the range of reasonableness.

### C.        The Settlement will obviate litigation hurdles for the Class

Any evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling parties. Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977)).

As noted above, Plaintiffs and the Class Members faced additional hurdles in this litigation, including WCU's promise of an appeal.

### D.        Counsel submits that the Settlement is reasonable and in the Class Members' best interests

Lastly, the belief of experienced counsel that a negotiated settlement is in the best interests of the class carries significant weight. *See, In re AT&T Mobility Wireless Data Services Sales Litigation*, 270 F.R.D. 330, 344 (N.D. Ill. 2010).   Class Counsel has significant experience in litigating numerous class actions, in state and federal court. That experience tells us that this Settlement is an excellent result for the Class.

## IV.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a date and time for the Final Approval Hearing. Other deadlines in the settlement approval

process, including the deadlines for requesting exclusion from the Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. Class Counsel propose the following schedule:

| **Event** | **Date** |
|---|---|
| Deadline for mailing the Notice to Class Members ("Notice Deadline") | 15 days after the Court signs and enters the Preliminary Approval Order |
| Deadline for opting out of Settlement and submission of objections | 35 days after Notice Deadline |
| Deadline for filing papers in support of final approval of the Settlement and Class Counsel's applications for an award of attorneys' fees and expenses | 14 days before Final Approval Hearing |
| Deadline to respond to any objections | 5 business days prior to Final Approval Hearing |
| The Final Approval Hearing | Approximately 50 days from Notice Deadline, at the Court's convenience |

This schedule is similar to those used and approved by numerous courts in contemporary class action settlements. It will ensure due process to Class Members regarding their rights under the Settlement. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374-75 (9th Cir. 1993).

## V.   <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court grant this unopposed motion for preliminary approval and enter the attached proposed order preliminary approving the Settlement, preliminarily certifying the Class for settlement purposes, directing that the Notice and Release be sent to Class Members, appointing Class Counsel, and setting a hearing date for final approval.

Respectfully submitted this 5th day of December, 2016.

By: <u>s/ Thomas J. Lyons Jr.</u>

Thomas J. Lyons, Jr., Esq.
**CONSUMER JUSTICE CENTER P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  651-770-9707
tommycjc@aol.com

Thomas J. Lyons, Sr., Esq.
Wis. Attorney Lic. No. 1019127
**LYONS LAW FIRM, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  651-770-9707
tlyons@lyonslawfirm.com

*ATTORNEYS FOR PLAINTIFFS AND THE CLASS*