IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRADLEY EGGEN and MARY EGGEN,
on behalf of themselves and all others
similarly situated,

          Plaintiffs,

  v.

WESTCONSIN CREDIT UNION,

          Defendant.

OPINION & ORDER

14-cv-873-bbc[1]

---

In this class action, plaintiffs Bradley Eggen and Mary Eggen are proceeding on a claim that defendant WESTconsin Credit Union violated the Driver's Privacy Protection Act by disclosing their driver license numbers in delinquency actions that defendant filed in Wisconsin state court. The parties have reached a settlement and they have filed a motion for preliminary approval. Dkt. 123. Because the terms of the agreement meet the low standard for preliminary approval, the court will grant the motion and set a schedule leading up to a fairness hearing.

BACKGROUND

Plaintiffs Mary Eggen and Bradley Eggen filed this class action on December 16, 2014. Plaintiffs had taken out consumer loans from defendant, who then sued them in state court in 2010 after they defaulted on the loan. Included in defendant's publicly filed court documents were plaintiffs' Social Security numbers and driver license numbers. In their

---

[1] Because Judge Crabb is on medical leave, I am issuing this order to prevent an undue delay in the progress of this case.

complaint, plaintiffs claimed that the disclosure of that information violated the Driver's Privacy Protection Act (18 U.S.C. §§ 2721-2725), the Wisconsin Consumer Act (Wis. Stat. §§ 421.101-427.105), Wisconsin's privacy law (Wis. Stat. § 995.50), and the common law of nuisance.

On March 20, 2015, the court granted defendant's motion to dismiss plaintiffs' claims under the Wisconsin Consumer Act and Wisconsin's privacy law on the ground that the statute of limitations had expired. Dkt. 31. This left plaintiffs' claims under the DPPA and Wisconsin common law nuisance.

In an order dated February 26, 2016, the court rejected various objections raised by defendant and certified the following class under Federal Rule of Civil Procedure 23(b)(3): "All individuals whose driver license numbers defendant WESTconsin disclosed on or after December 16, 2010 in an action filed in Wisconsin circuit court to recover unpaid loan balances." Dkt. 69, at 13. Plaintiffs dropped their claims regarding disclosure of their Social Security numbers, focusing solely on disclosure of their driver license numbers.

On August 16, 2016, the court granted in part and denied in part defendant's motion for summary judgment. Dkt. 97. The court agreed with defendant that disclosing driver license numbers did not qualify as a nuisance under Wisconsin law, so that claim was dismissed. *Id.* at 11-13.

The court rejected two arguments for dismissing plaintiffs' claim under the DPPA, which authorizes a cause of action against "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter." 18 U.S.C. § 2724(a). First, the court concluded that the phrase "motor vehicle record" includes a driver license. Dkt. 97 at 5-8.

2

Second, the court concluded that defendant had not shown that it disclosed plaintiffs' driver license numbers "[f]or use in connection with any civil . . . proceeding in any Federal, State, or local court," which is a permissible purpose under the DPPA. 18 U.S.C. § 2721(b)(4). Defendant argued that it had been required by state law to attach to its state court complaint documents that included plaintiffs' driver license numbers, but this court rejected the view that a requirement to attach a document excused defendant from redacting the document or filing it under seal. Dkt. 97, at 10-11. Because defendant did not identify any independent purpose that plaintiffs' driver license numbers served in the state court litigation, this court concluded that defendant had not disclosed the numbers "for use" in litigation. *Senne v. Village of Palatine*, 695 F.3d 597, 606 (7th Cir. 2012) ("[T]he actual information disclosed—i.e., the disclosure as it existed in fact—must be information that is used for the identified purpose. When a particular piece of disclosed information is not used to effectuate that purpose in any way, the exception provides no protection for the disclosing party.").

At the conclusion of the discussion of plaintiffs' DPPA claim, the court observed that there did not appear to be any remaining disputed issues of fact or law as to that claim. As a result, the court directed the parties to show cause why the court should not enter judgment in plaintiffs' favor on that claim. Dkt. 97, at 13-14.

In response to the court's order, the parties asked for a stay while they attempted mediation. Dkt. 98. The court granted the request, giving the parties until September 30, 2016, to either file a notice that they settled or respond to the order to show cause. Dkt. 99.

Mediation failed, but defendant resisted the entry of judgment. In its response to the order to show cause, defendant raised a new argument why it believed that plaintiffs' DPPA

claims failed. Dkt. 108. In particular, defendant argued that the DPPA does not apply to this case because defendant acquired plaintiffs' driver license numbers from plaintiffs' own driver licenses rather than from the Department of Motor Vehicles. Defendant cited 18 U.S.C. § 2721(a), which imposes disclosure limitations on a "State department of motor vehicles, and any officer, employee, or contractor thereof." The court rejected this argument because both § 2724(a) and § 2722(a) prohibit any "person" from disclosing personal information from a motor vehicle record without a permissible purpose and nothing in §2721(a) limited the reach of these other provisions. Dkt. 117, at 3. As a result, the court concluded that plaintiffs were entitled to summary judgment as to liability.

Defendant raised an objection to plaintiffs' claimed damages as well. In particular, defendant argued that plaintiffs were not entitled to statutory liquidated damages because they were not seeking any actual damages.[2] The relevant provision is 18 U.S.C. § 2724(b)(1), which states that "[t]he court may award . . . actual damages, but not less than liquidated damages in the amount of $2,500" for a violation of the DPPA.

The court observed that defendant had raised "an interesting question of statutory interpretation," Dkt. 117, at 6, but rejected the argument because the court had concluded years earlier that a plaintiff in a DPPA case could recover the $2,500 liquidated damages award even in the absence of any actual damages. *Parus v. Kroeplin*, No. 05-C-63-C, 2006 WL 278374, at *2 (W.D. Wis. Jan. 31, 2006). This conclusion was supported by the only two appellate decisions on the issue, *Kehoe v. Fiduciary Federal Bank & Trust*, 421 F.3d 1209, 1213

---

[2] Actual damages are not required in this circuit to have standing to sue under the DPPA; the public disclosure of private information is sufficient to satisfy the injury-in-fact test. *Graczyk v. W. Publ'g Co.*, 660 F.3d 275, 278 (7th Cir. 2011).

(11th Cir. 2005), and *Pichler v. UNITE*, 542 F.3d 380, 398 (3d Cir. 2008), which reached the same conclusion. In *Pichler*, 542 F.3d at 398, the court provided the following reasoning:

> [T]he first phrase ("The court may award—actual damages") is a grant of authority to the court—it enables the court to award actual damages, however high they might be. The second phrase ("but not less than liquidated damages ..."), then, limits that authority on the low end of the scale, creating a damage award floor. While the court may award actual damages, it may not grant an award "less than liquidated damages in the amount of $2,500." 18 U.S.C. § 2724(b)(1). But the first clause does not affect the baseline award of liquidated damages in the amount of $2,500 for any DPPA violation that the District Court chooses to compensate. In other words, the second phrase creates a base amount below which the court may not go, whether the plaintiff is able to prove actual damages or not.

Defendant cited one district court decision reaching the opposite conclusion, *Potocnik v. Carlson*, No. 13-CV-2093 (PJS/HB), 2016 WL 3919950 (D. Minn. July 15, 2016), but this court did not believe that the decision was persuasive in light of the other authority.

The court concluded that each of the class members was entitled to a $2,500 liquidated damages award, in accordance with § 2724(b)(1). Dkt. 117, at 8. Because defendant did not dispute plaintiffs' representation that there were 382 class members, the total amount of liquidated damages was $955,000.[3]

At the end of the order, *id.* at 9-10, the court observed that the only issue remaining for trial was punitive damages, which could be awarded "upon proof of willful or reckless disregard of the law." 18 U.S.C. § 2724(b)(2). The court expressed skepticism that plaintiffs could meet this standard, in part because plaintiff had not pointed to any evidence contradicting defendant's representation that it had started redacting its state court pleadings

---

[3] In their motion for preliminary approval, the parties represent that there are now 381 members. Class counsel should explain this discrepancy in their motion for final approval.

as soon as it learned about the requirements of the DPPA. Although defendant had not included the issue of punitive damages in its summary judgment motion, the court concluded that it made sense to resolve the issue pretrial if it was possible to do so. Dkt. #117, at 9-10. Accordingly, the court directed plaintiffs to present whatever evidence they had that defendant had acted willfully or recklessly and to supplement that evidence with a brief explaining why they were entitled to present their punitive damages claim to a jury. *Id.*

Plaintiffs complied with the court's instructions, Dkt. 118 and Dkt. 119, but two days later the parties contacted the court to report that the case had settled. Dkt. 120. On December 5, 2016, the parties filed their motion for preliminary approval of the settlement.

ANALYSIS

A.  **Preliminary Approval**

Under the terms of the agreement, defendant agrees to pay $700,000, which will be distributed as follows: (a) $1,149.15 to each of the 381 class members (a total of $437,826.15); (b) $5,000 to each class representative; (c) $231,000 for attorney fees; and (d) $21,174.01 for litigation costs. (These numbers add up to $700,000.16, so presumably the $700,000 figure is an approximation. Plaintiffs should correct this discrepancy in their motion for final approval.) In addition, defendant agrees to seek redaction of the relevant court records that include plaintiffs' driver license numbers. In exchange, plaintiffs agree to release their claims.

Under Federal Rule of Civil Procedure 23(e), the court must approve any class settlement and may do so only after the class members have had an opportunity to object and the court has held a hearing and concluded that the terms of the agreement are fair,

reasonable, and adequate. In this circuit, the practice is for the court to give its preliminary approval after reviewing the proposed settlement and then to give final approval after notifying the class members and holding a hearing. *E.g.*, *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980); *Groshek v. Great Lakes Higher Educ. Corp.*, No. 15-cv-143-jdp, 2016 WL 4690318, at *1 (W.D. Wis. Apr. 13, 2016); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, No. 13 C 9116, 2016 WL 3854603, at *3 (N.D. Ill. July 15, 2016). The question at the preliminary stage is whether the proposed settlement is "within the range of possible approval." *Armstrong*, 616 F.2d at 314; *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979); *Stewart v. Marshall Etc, Inc.*, No. 14-CV-1002-NJR-PMF, 2015 WL 5120817, at *1 (S.D. Ill. Aug. 28, 2015). At the final stage, the court must give greater scrutiny to the settlement, considering various factors such as the strength of the case compared to the settlement amount; the complexity, length, and expense of the litigation; any opposition to settlement; the opinion of competent counsel; and the stage of the proceedings (including the amount of discovery completed) at the time of settlement. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-64 (7th Cir. 2014); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

The proposed settlement satisfies the standard for preliminary approval. Under the settlement, each class member will receive approximately $1,150, which seems reasonable on its face in light of plaintiffs' failure to show that any of them suffered actual damages. Because defendant has agreed to redact the relevant court filings that include plaintiffs' protected information, it is unlikely that plaintiffs will be harmed by the disclosure in the future.

It is true that each class member is receiving less than half of the amount of statutory liquidated damages that this court determined could be awarded. However, the uncertainty of future rulings is a significant part of the determination whether a settlement is reasonable. *Martin v. Reid*, 818 F.3d 302, 306-07 (7th Cir. 2016). As discussed above, the Court of Appeals for the Seventh Circuit has not yet decided whether a plaintiff bringing a claim under the DPPA must prove actual damages to receive an award of liquidated damages. Although this court sided with plaintiffs on the issue, it also acknowledged that there was a split in authority and that defendants had raised an interesting question of statutory interpretation. When this uncertainty is combined with the possibility that the court of appeals could disagree with this court's other rulings in plaintiffs' favor regarding the scope of the DPPA, it is reasonable to apply a substantial discount to the award.

The other major component of the settlement is the amount of attorney fees, which total $231,000, or approximately one-third of the settlement. That is a significant sum, but it is consistent with other fee awards given preliminary approval in this court, *e.g.*, *Holmes v. Roadview, Inc.*, No. 15-cv-4-jdp, 2016 WL 1466582, at *5 (W.D. Wis. Apr. 14, 2016), and with what the court of appeals has said is presumptively reasonable. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782-83 (7th Cir. 2014). Also important, defendant fought plaintiffs every step of the way until reaching a proposed agreement at the eleventh hour. In light of the significant time and resources that counsel had to expend to obtain a settlement, the proposed fee award does not appear on its face to be a windfall for counsel.

In sum, at this preliminary stage of the approval process, the court concludes that the proposed settlement is within the range of possible approval. In their motion for final approval and at the fairness hearing, the parties should be prepared to address any objections

raised by the class members as well as each of the factors relevant to final approval of the proposed settlement.

**B. Notice to the Class**

Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed]" settlement. In this case, the parties propose a two-part notice process. First, plaintiff will mail each class member a postcard with a "summary notice" about the nature of the case, the terms of settlement, the class members' right to opt out of the settlement, and the date and location of the fairness hearing. Dkt. 123-2. Second, the postcard directs the class member to a website that includes a more detailed explanation of each class member's rights and a copy of the proposed settlement agreement. Alternatively, class members are given the address and phone number of class counsel if they want more information but cannot visit the website. Dkt. 123-1 and Dkt. 123-3.

The parties' proposed notice appears adequate, with one notable exception. In particular, the postcard says nothing about a class member's right to object to the proposed settlement. Instead, a class member must review the website to receive notice of that right. Although it is reasonable to leave the details for the website, the postcard should identify each of the basic choices a class member has. Accordingly, the court will approve the notice, with the condition that the following language is added to the postcard: "If you wish to object to the proposed settlement, you may explain your reasons in a letter to the court and mail it to Clerk of Court, Federal Courthouse, 120 North Henry Street, Madison, WI 53703

9

no later than March 1, 2017. Be sure to include the name of the case—Eggen v. WESTconsin Credit Union—in your letter."

In the parties' detailed notice on the website for objecting, class members are required to send their objections to the court *and* class counsel. The parties should delete the requirement to send objections to counsel. Because all objections will be docketed by the clerk of court, counsel will receive notice of each objection sent to the court. There is no reason to impose an additional burden on the class member.

**C. Schedule**

The parties propose the following schedule leading up to the fairness hearing:

> Deadline to class counsel for mailing the class notice: 15 days after the court enters this order;
>
> Deadline to class members for opting out of settlement or objecting to it: 35 days after the deadline for mailing the notice;
>
> Deadline to counsel for submissions in support of final approval of settlement, including a motion for attorney fees and costs: 14 days before the fairness hearing;
>
> Deadline to counsel for responding to objections of class members: 5 days before fairness hearing.

This schedule appears reasonable, again with one exception. The parties do not explain why they should submit their responses to class members' objections separately from their other submissions related to final approval and the court sees no reason to do so. Accordingly, those two deadlines will be combined.

ORDER

IT IS ORDERED that:

1. The parties' motion for preliminary approval of the settlement agreement, Dkt. 123, is GRANTED.

2. The parties' proposed notice to the class is APPROVED, subject to the conditions described in this order.

3. The parties may have until January 25, 2017, to send out the notice to each class member.

4. The parties may have until March 20, 2017, to file a motion for final approval of the settlement agreement and for attorney fees and costs and to respond to any objections submitted by class members.

5. A hearing on final approval of the settlement agreement will be held on April 6, 2017, at 1:00 p.m.

Entered January 12, 2017.

                BY THE COURT:

                /s/

                _____
                JAMES D. PETERSON
                District Judge